# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOSEPH W. HUBER, JR.,

        Petitioner,   :   Case No. 3:11-cv-008

  - vs -                       District Judge Thomas M. Rose
                                      Magistrate Judge Michael R. Merz

TERRY TIBBALS, WARDEN,
 London Correctional Institution,

                                     :

        Respondent.

## REPORT AND RECOMMENDATIONS ON REMAND

This case is before the Court on remand from the United States Court of Appeals for the Sixth Circuit. *Huber v. Timmerman-Cooper*, Case No. 14-3158 (Feb. 25, 2015, unreported, copy at Doc. No. 15).

Respondent's counsel has advised the Court that Terry Tibbals is Huber's present custodian because he has been transferred to the London Correctional Institution. Tibbals is hereby substituted as Respondent and the caption amended as set forth above.

The appellate court issued its Mandate in the case on March 19, 2015, returning jurisdiction to this Court (Doc. No. 48). The Court then filed a Scheduling Order inviting supplemental memoranda by the parties (Doc. No. 49). Huber filed his Memorandum in Support of his Second Ground for Relief on April 10, 2015 (Doc. No. 52). The Warden filed a Memorandum in Opposition on April 23, 2015 (Doc. No. 53) and Huber responded on May 4, 2015 (Doc. No. 54), rendering the case ripe for decision on remand.

The sole ground for habeas corpus relief remaining in this case is Ground Two which

Huber pled as follows:

> **Ground Two:** Appellate counsel was ineffective for failing to raise an insufficiency of evidence claim in regards to the State using "pill count" to enhance the degree of the offense, in violation of R.C. 2925.03(D) and the 6th and 14th Amendments of the U.S. Constitution.
>
> **Supporting facts:** The State used "pill count" instead of the statutory mandates of R.C. 2925.03(D) when using the "bulk amount" to enhance the degree of the offense.

(Amended Petition, Doc. No. 16-1.)

On appeal the Sixth Circuit decided this Court's conclusion that Ground Two was procedurally defaulted was in error because this Court treated the Ohio court of appeals' dismissal of this claim as having been made on an adequate and independent state procedural ground. *Huber v. Timmerman-Cooper, supra,* PageID 1481). In dictum the Sixth Circuuit suggested that Ground Two had merit, but remanded for this Court to consider the merits in the first instance. *Id.* at PageID 1481-83.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  If this Court found ineffective assistance of appellate counsel and ordered a new appeal as part of a conditional writ, this is the standard the Ohio courts would apply.  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

3

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam)*.

In this remanded case, we are not directly examining whether sufficient evidence undergirds the convictions. Rather, we must decide whether raising that issue on direct appeal would likely have had an impact on the outcome of the appeal. *Huber v. Timmerman-Cooper, supra,* PageID 1483, citing *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).

Huber was convicted and sentenced in this case for four violations of Ohio Revised Code § 2925.11 for possessing

(1) 100 forty mg tablets of Methadone, a second degree felony (Count One);

(2) 267 five mg tablets of Oxycodone, a fifth degree felony (Count Three);

(3) 615 five mg tablets of Oxycodone, a second degree felony (Count Five); and

(4) 1900 tablets of Acetaminophen, each containing 30 mg of codeine phosphate, a third-degree felony (Count Six).

4

Ohio law adjusts the penalties for possession of controlled substances according to which "schedule" those drugs appear on, the schedules being adopted under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq. Ohio Revised Code § 2925.11(A) prohibits possession of controlled substances with exceptions not relevant here. Ohio Revised Code § 2925.11(C)(1)(b) makes possession of a Schedule I or II controlled substance, again with exceptions not relevant to this case, a felony of the second degree if the amount involved equals or is greater than five times the bulk amount but less than fifty times the bulk amount. Methadone and Oxycodone are listed on Schedule I or II. Ohio Revised Code § 2925.11(C)(2)(c) makes possession of a Schedule III, IV, or V controlled substance in amount equal to or great than five times bulk but less than fifty times bulk a felony of the third degree. Acetaminophen with codeine is listed on one of these three schedules. To obtain a conviction and sustain it on appeal, the State was required to prove Huber possessed five times the bulk amounts of Methadone (Count One), Oxycodone (Count Five), and Acetaminophen with codeine (Count Six) as well as the bulk amount of Oxycodone (Count Three).

At the time of Huber's offenses in 2007, Ohio defined "bulk amount" in Ohio Revised Code § 2925.01(D)(1)(d) for Schedule II opiates or opium derivatives as "an amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual." For substances on Schedule III, IV, or V, bulk amount was defined as "an amount equal to or exceeding one hundred twenty grams or thirty times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual."

As is evident on the face of the statute, there are two alternative ways to prove bulk amount, by weight or by showing the maximum daily dose. *State v. Mattox,* 13 Ohio App. 3d 52

5

(2nd Dist. 1983). The Sixth Circuit read the record as showing the State attempted to use the maximum daily dose alternative at trial. Its decision reads in relevant part:

> On appeal, the state argues for the first time that it demonstrated the bulk amount in this case based on the weight of the drugs rather than the maximum daily dose standard. But [Scott] Woodruff testified that the bulk amount of "pharmaceutical type drugs" was calculated based on "the number of tablets," not the weight in grams, and in each instance he testified as to the number of tablets that constituted the bulk amount. There was no testimony presented as to the actual weight of the drugs, and the jury was never provided with the weights that constitute the bulk amount. When the jury asked the court during deliberations what the bulk amount was for each substance and how it was determined, the jury was referred to Woodruff's testimony. Outside the jury's presence, the trial court noted that, although there were "other ways of determining bulk amount," the number of tablets was "the only evidence before the jury as to bulk amount for those particular controlled substances." The prosecutor similarly stated that: "It was clear from the testimony of Detective Woodruff that the bulk amounts . . . were based on the number of tablets," not on "the weight and grams of these pills."

*Huber v. Timmerman-Cooper, supra*, PageID 1482-83.

The State's Supplemental Memorandum expresses surprise at this statement by the circuit court, claiming the trial record shows the State relied on the weight method of proof rather than the maximum daily dose standard (Doc. No. 53, PageID 1542.)  However, in its alternative argument on the merits of Ground Two the State argued it had shown bulk amount by unit dosage rather than weight:

> Furthermore, the record belies Huber's claim that the State failed to reference the manual when determining bulk amount. At trial, Detective Woodruff testified to how much of each individual drug was seized and, after referencing the manual in order to prepare his report and which report was used to refresh the witness's recollection, the amount of each drug required to constitute bulk amount based on unit dosage, and that the amount of each drug seized was five times more than bulk amount but less than fifty times bulk amount. (See Doc. 4-4, Trial Transcript from July 17, 2006, at Tr. 160-64, PageID# 672-676.) Tim Sheppard, a forensic

6

> criminologist for the City of Springfield and its crime lab, testified as the prosecution's expert who examined the drugs seized, and confirmed their substance and what Schedule of drug they each belonged to in Ohio. (See Doc. 4-4, Trial Transcript from July 17, 2006, at Tr. 207-212, PageID# 719-724.) In that Detective Woodruff testified that he referred to the reference manual when he determined the unit dosage in determining the bulk amount, bulk amount was demonstrated at trial. Huber can show no prejudice to excuse the default or in appellate counsel's failure to assign the bulk amount determination as an assigned error on direct appeal.

(Return of Writ, Doc. No. 19, PageID 956-57.)  The Court did not evaluate this merits argument because it found Ground Two was procedurally defaulted.

In arguing the merits now, Respondent cites extensively from the trial testimony.  Rather than rely on the citations, the Magistrate Judge has read the trial transcript testimony of witnesses Woodruff and Sheppard.  Their testimony can be summarized as follows.

Scott Woodruff had, at the time of trial, been a Springfield, Ohio, police officer since September, 1989, and assigned to the narcotics unit since December 1995 (Trial Tr. Doc. No. 4-4, PageID 663).  On March 7, 2006, he was performing surveillance at 1070 ½ North Belmont Avenue in Springfield because of suspected drug activity at that location.  *Id.*  at PageID 664. Huber arrived at that location, entered, remained a minute or two, then exited with a heavy suitcase.  *Id.* at PageID 666.  When Woodruff opened the suitcase, it had a "large amount of pharmaceuticals in it." *Id.*  at PageID 671.  He testified that charges were filed "on the pharmaceutical type drugs, those are scheduled, classified drugs and are charged relating to the bulk amount, which would be the number of tablets." *Id.*  at PageID 672.  He identified State's Exhibit 4 as "It's a prescription bottle containing Methadone tablets.  It's a Methadone Hydrochloride tablet, 40 milligrams, a bottle containing 100 tablets, which is an unopened, sealed bottle." *Id.*  at PageID 673-74.  He then testified that fifteen tablets is the bulk amount

7

and a 100 tablets is more than five times but less than fifty times that bulk amount. *Id.* at PageID 674.

Woodruff identified State's Exhibit 5 as "seven pharmaceutical packaged bottles of Endocet . . . Oxycodone and Acetaminophen tablets of five milligrams" and a total of 615 tablets. *Id.* at PageID 675. He testified further that bulk is sixty tablets, so 615 tablets is more than five but less than fifty times bulk. *Id.* State's Exhibit 3 was a pharmaceutical package of Roxicet, a combination of Oxycodone and Acetaminophen in five milligram tablets with a total of 267 tablets. *Id.* He testified the bulk amount is thirty tablets so the 267 would be more than five times but less than fifty times bulk. *Id.*

State's Exhibit 2 consisted of 1,990 three hundred milligram tablets of Codeine Posphate, Woodruff testified, so once again more than five times bulk but less than fifty times. *Id.* at PageID 676.

Timothy C. Sheppard testified he had been a forensic criminalist with the Springfield Police Department since December 1977 with the exception of 2003-2005 when he was retired. *Id.* at PageID 716. He was accepted by the court, without objection by the defense, in the area of "drug implication." *Id.* at PageID 717. His laboratory testing confirmed the presence of the charged controlled substances in the seized samples from Huber. *Id.* at PageID 719-22. During his examination he referenced a book called the Drug Identification Bible, but did not testify as to any of the contents of the book. *Id.* at PageID 722-23.

The Magistrate Judge's review of this testimony confirms the impression formed by the Sixth Circuit that the argument at trial was based on unit dosage rather than weight. So, for example, 100 tablets of Methadone at 40 milligrams each is 4, 000 milligrams or four grams. However, the statutory bulk amount by weight is twenty grams, not four. Five times bulk by

weight would be one hundred grams.

Respondent is correct that the State has the option of proving bulk amount by weight or by showing the maximum daily dosage as shown in one of the standard pharmaceutical reference works listed in Ohio Revised Code § 2925.01(M) or otherwise approved by the \Ohio State Board of Pharmacy. *State v. Kozic*, 2014-Ohio-3788, ¶ 41,2014 Ohio App. LEXIS 3721 (7th Dist. 2014), citing *State v. Montgomery*, 17 Ohio App. 3d 258, 260 (1st Dist. 1984). But the Magistrate Judge finds no reference to any such works in the testimony of Woodruff or Sheppard.

Respondent notes that Huber's counsel did not object to Woodruff's testimony about what bulk amount was ((Supplemental Memorandum, Doc. No. 53, PageID 1541-42). That is accurate, but she did make a motion for judgment of acquittal which the Ohio courts may find preserved that objection.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967); *United States v. Cronic,* 466 U.S. 648 (1984). The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600 (1974). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal

amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). However, failure to raise even a single issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

Raising this assignment of error would likely have had an impact on the outcome of the case. Faced with the same argument on Huber's appeal of the fentanyl conviction arising out of the same seizure of drugs, the Second District reopened its own judgment and reduced that conviction from a second degree to a fifth degree felony. *State v. Huber*, 187 Ohio App. 3d 697, 933 N.E. 2d 345 (2nd Dist. 2010).

In any event, determination of whether the State adequately proved possession of five times bulk on the various drugs should be decided in the first instance by the Second District Court of Appeals. Huber spends most of his reply memorandum arguing that the Sixth Circuit

has already decided the State failed to prove bulk amount (Doc. No. 54, PageID 1565-69).  He asserts any claim about whether there was sufficient evidence is reserved for the Sixth Circuit en banc or the United States Supreme Court on certiorari.

However, Huber over extends the Sixth Circuit decision.  That court held the Second District Court of Appeals did not rely on an adequate and independent state procedural ground when it denied his 26(B) application as a second application.  It expressly remanded the case to this Court to consider the ineffective assistance of appellate counsel claim on the merits.  *Huber v. Timmerman-Cooper, supra*, PageID 1483.  Its observations on proof of bulk amount is persuasive dictum, not a decision on an issue before it.

The Magistrate Judge concludes Huber was denied effective assistance of appellate counsel when his attorney did not raise a claim that the State had produced insufficient evidence of bulk amount of the controlled substances involved.  It is accordingly respectfully recommended that Petitioner be GRANTED a writ of habeas corpus on terms that he be released unless the Second District Court of Appeals reopens his direct appeal and reaffirms his conviction not later than six months from the date of final judgment in this case.

June 1, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).